UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

ANDREW HARVEY,

          Plaintiff,

          v.                           CAUSE NO. 3:20-CV-376-MGG

DR. MARTHAKIS and NURSE
TURNER,

          Defendants.

<u>OPINION AND ORDER</u>

Andrew Harvey, a prisoner without a lawyer, is proceeding in this case on one claim against Dr. Nancy Marthakis and Nurse Tiffany Turner "in their individual capacities on a claim for monetary damages under the Eighth Amendment[.]" ECF 11 at 5. Specifically, Mr. Harvey alleged in his complaint that (1) Dr. Marthakis delayed treatment for his knee injury between December 10, 2019, and February 10, 2020, and (2) Nurse Turner took away his wheelchair on January 9, 2020, even though he was in severe pain and had been assigned the wheelchair until March 11, 2020. ECF 10 at 5-7. Dr. Marthakis and Nurse Turner filed a motion for summary judgment. ECF 46. Mr. Harvey filed a response and cross-motion for summary judgment. ECF 49. Dr. Marthakis and Nurse Turner filed a reply to Mr. Harvey's response. ECF 52. They also filed a response to Mr. Harvey's cross-motion for summary judgment. ECF 59. Mr. Harvey filed a reply to Dr. Marthakis and Nurse Turner's response. ECF 60. The summary judgment motions are fully briefed and ripe for ruling.

I.          **FACTS**

On December 10, 2019, Mr. Harvey injured his knee while playing basketball. ECF 46-1 at 15. He was taken to medical where his knee was wrapped and he was given crutches and Naproxen. ECF 46-2 at 1-3. He was instructed not to bear weight on his right leg and to return the next day for x-rays. *Id.* The next day, Mr. Harvey saw Dr. Marthakis and received an x-ray of his right knee. ECF 46-1 at 18. The x-ray showed Mr. Harvey's right knee had a dislocated kneecap, and Dr. Marthakis strongly suspected he had a patellar tendon tear. *Id.* at 18-19; ECF 46-2 at 4-8. Dr. Marthakis advised Mr. Harvey she would request approval "downstate" to schedule him for an MRI. *Id.* It was Mr. Harvey's understanding that Dr. Marthakis needed approval from her "bosses" before she could send him for an MRI. ECF 46-1 at 19.

During that same visit on December 11, 2019, Mr. Harvey received an order for a wheelchair. *Id.* at 20. Mr. Harvey's understanding was that he was assigned the wheelchair for three months, and he received a property receipt stating the wheelchair was to be returned on March 11, 2020. *Id.* at 20-21; ECF 46-3. The medical record states Mr. Harvey was to receive the wheelchair for "3 weeks," but it also states the order for the wheelchair "expires 3/11/20." ECF 46-2 at 9. Thus, it is unclear from the medical records whether Mr. Harvey was meant to receive the wheelchair for three weeks or three months.

On December 16, 2019, Mr. Harvey presented to a nurse and complained he needed an emergency MRI. *Id.* at 10-12. The nurse informed Mr. Harvey that MRI requests have to go through the proper channels and that he needed to be patient. *Id.*

On January 8, 2020, Mr. Harvey was informed he was being transported to a hospital to receive an MRI. ECF 46-1 at 22-23. When Mr. Harvey arrived at the hospital, the medical personnel informed him he did not have an MRI scheduled. *Id.* at 25. The hospital called the prison's medical facility to inquire about the appointment, but it was 6:00 p.m. and everyone involved in scheduling the appointment was gone for the day. ECF 46-2 at 13-14. Mr. Harvey was returned to the prison without receiving an MRI. *Id.* Once Mr. Harvey returned to the prison, he complained of pain and received a Toradol injection. *Id.* at 14.

On January 9, 2020, Mr. Harvey was directed to see the providers in medical because Dr. Marthakis wanted him evaluated. ECF 46-1 at 29; ECF 46-2 at 15-16. Mr. Harvey arrived for the evaluation in his wheelchair. ECF 46-2 at 16. Nurse Turner received Mr. Harvey for the evaluation, at which time she noted he was not authorized for a wheelchair and offered him crutches instead. *Id.* Nurse Turner asked Mr. Harvey some questions and advised him she needed to take the wheelchair. ECF 46-1 at 30. Mr. Harvey responded that he had been given the wheelchair for three months, but Nurse Turner checked a binder and confirmed he no longer was assigned the wheelchair. *Id.* Nurse Turner offered to provide Mr. Harvey crutches, but he responded he already had crutches. *Id.* at 30-31. An officer pushed Mr. Harvey back to his cellhouse in a wheelchair and helped him retrieve his crutches. *Id.* at 31-32.

On January 10, 2020, Mr. Harvey saw Dr. Marthakis for a provider visit. *Id.* at 32. Dr. Marthakis apologized to Mr. Harvey for the confusion regarding his January 8 MRI and advised him there had been a mistake with the paperwork in scheduling the MRI.

*Id.* at 26, 33; ECF 46-2 at 18. Dr. Marthakis assured Mr. Harvey it had been an honest mistake and that he was being rescheduled for an MRI. ECF 46-2 at 18. Mr. Harvey did not know whether Dr. Marthakis was apologizing for a mistake she made or on behalf of the facility as a whole. ECF 46-1 at 26. Dr. Marthakis also determined there was no continued need for the wheelchair, which had been correctly discontinued, and advised Mr. Harvey to continue using crutches and a knee wrap. ECF 46-2 at 18. Dr. Marthakis also attempted to move Mr. Harvey to the medical dorm so he could restrict his movement, have meals delivered, and have closer monitoring of his vitals. *Id.*; ECF 46-1 at 33-34. Mr. Harvey initially refused to move to the medical dorm, but eventually agreed to move to the medical dorm. ECF 46-1 at 34-35.

On January 13, 2020, Mr. Harvey was transported to the hospital and received an MRI, which showed he had a ruptured patellar tendon. ECF 46-1 at 37; ECF 46-2 at 20; ECF 53 at 10-11. Dr. Marthakis generated an urgent request for an orthopedic consultation. ECF 46-2 at 20. On January 16, 2020, Mr. Harvey refused to allow his vitals to be measured. ECF 46-2 at 20. Dr. Marthakis ordered five nurse visits to measure Mr. Harvey's vitals between January 17 and January 22, 2020. *Id.* at 22-30. On January 23, 2020, Dr. Marthakis authored a chart update indicating Mr. Harvey had an orthopedic appointment scheduled. *Id.* at 31. Medical staff attempted to expedite Mr. Harvey's orthopedic appointment to a sooner date, but was advised the orthopedic specialist was unavailable. *Id.* at 33. On January 28, 2020, Dr. Marthakis wrote a chart update indicating Mr. Harvey had gone to see an outside orthopedic specialist. *Id.* at 36-38. Between January 28 and February 7, Dr. Marthakis continued to send nurses to

regularly check Mr. Harvey's vitals. *Id.* at 39-48. On February 7, 2020, Dr. Marthakis

wrote a chart update reflecting Mr. Harvey was scheduled to receive knee surgery and

was sent to an outside provider to fit him for a post-surgery ice compression unit. *Id.* at

49-51. On February 11, 2020, Mr. Harvey returned from the hospital after receiving knee

surgery. *Id.* at 52-60. Because neither party disputes these facts, the court accepts them

as undisputed.

## II.     ANALYSIS

Under the Eighth Amendment, inmates are entitled to adequate medical care.

*Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To establish liability under the Eighth

Amendment, a prisoner must show: (1) his medical need was objectively serious; and

(2) the defendant acted with deliberate indifference to his medical need. *Farmer v.*

*Brennan*, 511 U.S. 825, 834 (1994). Deliberate indifference is a high standard, and is

"something approaching a total unconcern for a prisoner's welfare in the face of serious

risks," or a "conscious, culpable refusal" to prevent harm. *Duane v. Lane*, 959 F.2d 673,

677 (7th Cir. 1992). "[C]onduct is deliberately indifferent when the official has acted in

an intentional or criminally reckless manner, i.e., the defendant must have known that

the plaintiff was at serious risk of being harmed and decided not to do anything to

prevent that harm from occurring even though he could have easily done so." *Board v.*

*Farnham*, 394 F.3d 469, 478 (7th Cir. 2005). For a medical professional to be held liable

for deliberate indifference to an inmate's medical needs, she must make a decision that

represents "such a substantial departure from accepted professional judgment, practice,

or standards, as to demonstrate that the person responsible actually did not base the

decision on such a judgment." *Jackson v. Kotter*, 541 F.3d 688, 697 (7th Cir. 2008). As the

Seventh Circuit has explained:

> [M]edical professionals are not required to provide proper medical
> treatment to prisoners, but rather they must provide medical treatment
> that reflects professional judgment, practice, or standards. There is not one
> proper way to practice medicine in a prison, but rather a range of
> acceptable courses based on prevailing standards in the field. A medical
> professional's treatment decisions will be accorded deference unless no
> minimally competent professional would have so responded under those
> circumstances.

*Id.* at 697-698. Negligence, incompetence, or even medical malpractice do not amount to

deliberate indifference. *Pierson v. Hartley*, 391 F.3d 898, 902 (7th Cir. 2004).

Furthermore, a prisoner is not entitled to demand specific care, nor is he entitled

to the "best care possible." *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997). Where the

defendant has provided some level of care for a prisoner's medical condition, in order

to establish deliberate indifference the prisoner must show that "the defendants'

responses to [his condition] were so plainly inappropriate as to permit the inference that

the defendants intentionally or recklessly disregarded his needs." *Hayes v. Snyder*, 546

F.3d 516, 524 (7th Cir. 2008). A mere disagreement with medical professionals about the

appropriate treatment does not amount to an Eighth Amendment violation. *Ciarpaglini

v. Saini*, 352 F.3d 328, 331 (7th Cir. 2003).

    a.  *Dr. Marthakis*

The defendants argue Dr. Marthakis provided constitutionally adequate

treatment to Mr. Harvey because she consistently treated Mr. Harvey's knee injury and

there is no evidence she unnecessarily prolonged his pain. ECF 47 at 13-14. Here, it is

6

undisputed Dr. Marthakis provided Mr. Harvey treatment for his knee injury, as she took x-rays, scheduled him to receive an MRI, monitored his vitals regularly, scheduled him to see an orthopedic specialist, and provided him with knee wraps, pain medication, a wheelchair, and crutches while he was awaiting surgery. Thus, to establish deliberate indifference, Mr. Harvey must show Dr. Marthakis' treatment was "so plainly inappropriate as to permit the inference that [she] intentionally or recklessly disregarded his needs." *See Hayes*, 546 F.3d at 524. Mr. Harvey argues Dr. Marthakis' treatment was plainly inappropriate for several reasons.

First, Mr. Harvey argues Dr. Marthakis unnecessarily delayed treatment for his knee injury. ECF 53 at 17-22. However, it is undisputed Dr. Marthakis took x-rays of Mr. Harvey at their first meeting and informed him she would request approval "downstate" to schedule him for an MRI. Although it took several weeks for Mr. Harvey to receive the MRI, there is no evidence Dr. Marthakis delayed in requesting approval for the MRI or delayed in scheduling the MRI. Similarly, once Dr. Marthakis received the results of the MRI, there is no evidence she unnecessarily delayed in scheduling Mr. Harvey to see an orthopedic specialist or scheduling his knee surgery. In fact, the medical records show the prison's medical staff attempted to expedite Mr. Harvey's orthopedic appointment but were unsuccessful due to the orthopedic specialist's schedule. Thus, there is no evidence by which a reasonable jury could conclude Dr. Marthakis violated Mr. Harvey's Eighth Amendment rights by unnecessarily delaying his treatment.

Next, Mr. Harvey argues Dr. Marthakis was deliberately indifferent for sending him to receive an MRI on January 8 without properly scheduling the appointment with the hospital. ECF 53 at 18-20. Mr. Harvey offers no evidence Dr. Marthakis was responsible for the mistake in scheduling the January 8 MRI, and admits Dr. Marthakis may have been apologizing to him on behalf of the facility. Regardless, even if Dr. Marthakis acted negligently in scheduling the January 8 MRI, a prisoner cannot establish a claim under the Eighth Amendment merely by showing negligence. *See Pierson*, 391 F.3d at 902. Moreover, Dr. Marthakis took steps to reschedule Mr. Harvey's MRI and he received an MRI several days later and ultimately had surgery on his knee. Thus, no reasonable jury could conclude Dr. Marthakis acted with "a total unconcern for" Mr. Harvey's welfare or a "conscious, culpable refusal" to prevent harm in scheduling the January 8 MRI. *See Duane*, 959 F.2d at 677.

Lastly, Mr. Harvey argues Dr. Marthakis was deliberately indifferent to his knee injury for allowing his wheelchair to be confiscated on January 9. ECF 53 at 19-22. However, it is undisputed Dr. Marthakis provided Mr. Harvey with crutches, wrapped his knee, and moved him to the medical dorm so he could remain non-weightbearing. While Mr. Harvey may have preferred to keep his wheelchair instead of the crutches, he offers no evidence it was "plainly inappropriate" for Dr. Marthakis to provide him with crutches instead of a wheelchair. *See Hayes*, 546 F.3d at 524; *Ciarpaglini*, 352 F.3d at 331 (a mere disagreement with medical professionals about the appropriate treatment does not amount to an Eighth Amendment violation).

Based on the foregoing, even construing the evidence in Mr. Harvey's favor, no reasonable jury could conclude Dr. Marthakis provided Mr. Harvey constitutionally inadequate treatment for his knee injury. Thus, summary judgment is warranted in favor of Dr. Marthakis.

b. *Nurse Turner*

The defendants argue Nurse Turner was not deliberately indifferent to Mr. Harvey's knee injury for taking his wheelchair on January 9, 2020, because she had a viable reason for taking his wheelchair and she took efforts to ensure his safety by providing him crutches and ensuring he was safely returned to his cellhouse. ECF 47 at 14-17. Mr. Harvey responds that Nurse Turner was deliberately indifferent because she took his wheelchair on January 9 even though she had no order from a doctor telling her to do so and she knew Mr. Harvey was in serious pain. ECF 53 at 23.

Here, Nurse Turner had a viable reason for taking Mr. Harvey's wheelchair on January 9, as Mr. Harvey's medical record from December 11, 2019, stated he was to receive the wheelchair for three weeks. *See* ECF 46-2 at 9. When Mr. Harvey responded that he was meant to have the wheelchair for three months, Nurse Turner checked her paperwork and confirmed he was not supposed to have the wheelchair. *See* ECF 46-1 at 30. The next day, Dr. Marthakis entered an order reflecting Mr. Harvey's use of the wheelchair was properly discontinued. *See* ECF 46-2 at 18. Mr. Harvey argues he was meant to have the wheelchair for three months, but he does not dispute the contents of his medical records. *See* ECF 46-1 at 17-18 (agreeing he has no reason to dispute the contents of his medical records). Thus, even assuming the notation in Mr. Harvey's

medical record indicating he was only to have the wheelchair for three weeks was an error, Nurse Turner was entitled to rely on the medical record and there is no evidence she knew of any error. Accordingly, no reasonable jury could conclude Nurse Turner was deliberately indifferent for determining Mr. Harvey was only meant to have the wheelchair for three weeks. Moreover, after taking Mr. Harvey's wheelchair, Nurse Turner attempted to provide him with crutches and made efforts to ensure he was safely returned to his dorm. Thus, even construing the evidence in Mr. Harvey's favor, no reasonable jury could conclude Nurse Turner acted with "a total unconcern" for Mr. Harvey's welfare or a "conscious, culpable refusal" to prevent harm by taking his wheelchair on January 9. *See Duane*, 959 F.2d at 677.  Summary judgment is thus warranted in favor of Nurse Turner.

For these reasons, the court:

(1) GRANTS Dr. Marthakis' and Nurse Turner's motion for summary judgment (ECF 46);

(2) DENIES Andrew Harvey's cross-motion for summary judgment (ECF 49); and

(3) DIRECTS the clerk to enter judgment in favor of the defendants and against Andrew Harvey.

SO ORDERED on December 15, 2021

s/Michael G. Gotsch, Sr.
Michael G. Gotsch, Sr.
United States Magistrate Judge
